IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| | * |
| NRT MID-ATLANTIC, INC. | |
| A Maryland Corporation | * |
| d/b/a COLDWELL BANKER | |
| RESIDENTIAL BROKERAGE, | * |
| | |
| Plaintiff, | * |
| | |
| v. | *   CIVIL NO.: WDQ-05-cv-3350 |
| | |
| SANDRA WALKER, et al., | * |
| | |
| Defendants. | * |

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION AND ORDER

Plaintiff NRT Mid-Atlantic, Inc., d/b/a Coldwell Banker
Residential Brokerage ("CBRB"), seeks to enjoin Defendants Sandra
Walker ("Walker"), Marlene Bradford ("Bradford"), and Robert Harmon
("Harmon") from using CBRB proprietary documents during this
litigation.  For the reasons discussed below, CBRB's motion for a
preliminary injunction will be granted in part and denied in part.


BACKGROUND

CBRB engages in the real estate business, including the sale
and rental of residential real estate in Ocean City, Maryland.
Compl. at ¶ 1.  Defendants are former employees of CBRB who are now
employed by Central Reservations, Inc. ("CRI").[1]  *Id*. at ¶ 2-4.

---

[1] CBRB alleges that Walker and Harmon are currently CRI
employees, and Bradford serves as a principal of CRI.  *Id*. at ¶¶

CRI is a newly formed competitor of CBRB in the Ocean City, Maryland area. *Id*. at p. 2. CBRB alleges that the Defendants obtained proprietary documents and engaged in conduct in violation of CBRB's employee handbook, federal law[2] and common law. On January 25, 2006, a hearing was held before this Court on CBRB's motion for a preliminary injunction.

STANDARD OF REVIEW

In determining whether to grant a motion for a preliminary injunction, the court must consider: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood plaintiff will succeed on the merits; and (4) the public interest. *Blackwelder Furniture Co. of Statesville, Inc. v. Selig Mfg. Co., Inc.*, 550 F.2d 189, 193-95 (4th Cir. 1977). As the party seeking the injunction, CBRB must establish that, on balance, these factors favor the grant of an injunction. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1992).

The court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied; if such a showing is made, the court must then balance the

---

2-4.

[2] *See* 18 U.S.C. §§ 1030, et seq. (2005).

likelihood of harm to the defendant. *The Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 (4th Cir. 2002) (*citing Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 859 (4th Cir. 2001); *Direx Israel,* 952 F.2d at 812). Absent a clear showing of irreparable harm, a preliminary injunction is inappropriate. *See Direx Israel,* 952 F.3d at 812 (*citing Sampson v. Murray*, 415 U.S. 61, 88 (1974).

ANALYSIS

CBRB seeks to enjoin the Defendants and other employees and agents of CRI from using proprietary documents and engaging in conduct in competition with CBRB's business. Despite conceding that the Defendants were at-will employees, CBRB argues that an injunction is appropriate because of employee handbook policies the Defendants acknowledged while employed by CBRB and wrongful use of CBRB's computer system in violation of federal law.[3]

I.  Documents

CBRB identified the following ten categories of documents that they seek to enjoin the Defendants from using at CRI based upon a "screenshot" of 149 folders located on Bradford's home computer

---

[3] The breach of the duty of loyalty and Computer Fraud and Abuse Act counts in the Complaint have only been alleged against Walker and Harmon. Conversion and civil conspiracy claims have been asserted against all three Defendants.

produced in discovery.  Trans. at 3-4.

1. Form Letters

CBRB contends that there are 51 folders on Bradford's computer containing documents prepared by Bradford while she was employed by CBRB regarding the rental real estate business.  *Id*. at 6, 21. CBRB argues that the form letters belong to them, not as a matter of contract, but as a matter of policies contained in the CBRB employee handbook.[4]  *Id*. at 7.  It is believed that some of the form letters are blank, while others contain contact information in the address field.  *Id*. at 21.  Defendants agreed to turn the letters over to CBRB without conceding that the letters may be proprietary.  *Id*. at 38-39.

2. Proprietary Forms

CBRB contends that there are proprietary forms created for use at CBRB's business.  Id. at 8-9.  This category consists of a

---

[4] It is undisputed that all Defendants were at-will employees of CBRB.  In Maryland, an employment contract of an indefinite duration is considered an at-will employment contract.  *See Adler v. American Standard Corp.*, 291 Md. 31, 35, 432 A.2d 464, 467 (1981).  When the employment relationship is at-will, either party may legally terminate the relationship at any time.  *Id*. *But see Wholey v. Sears, Roebuck and Co.*, 370 Md. 38, 48, 803 A.2d 482, 487-88 (2002)(discharge of an at-will employee is subject to public policy exceptions, including tort of wrongful discharge).  The Defendants are not subject to a non-competition or non-solicitation agreement.  CBRB also concedes that its employee handbook is not a contract.  Trans. at 30.

4

variety of forms used in connection with the operation of CBRB's rental real estate business. *Id*. Defendants agreed to turn the forms over to CBRB without conceding that the forms may be proprietary. *Id*. at 38-39.

### 3. Bonus 2005 Information

CBRB contends that there is one folder entitled "Bonus '05 Information." *Id*. at 10. CBRB does not know who created the document, but argues that it is proprietary and confidential as it contains information regarding the percentage bonus structure for approximately 40 CBRB employees from which salary information could be extrapolated. *Id*. at 10-14. Defendants agreed to turn the bonus information over to CBRB without conceding that the information may be proprietary. *Id*. at 38-39.

### 4. Listings and Long-Term Leases

CBRB contends that there are 14 folders with listings and long-term leases. *Id*. at 14-16. The listings are blank contractual agreements used to list an owner's property with CBRB. *Id*. at 14. CBRB concedes that Bradford did not create these documents; however, Bradford testified at her deposition that she used the listing document in part to create the listing agreement for her new company. *Id*. at 15. Defendants agreed that they will not use the CBRB listing and long-term lease forms. *Id*. at 39-41.

5. Rate Sheets

CBRB contends that there are forms containing information regarding maintenance and cleaning rates. *Id*. at 16. Although this information can be obtained from other sources, CBRB argues that these particular rate sheets are proprietary, because they were created for CBRB. *Id*. at 17-18. Defendants agreed that they will turn over the CBRB rate sheets and will not use them. *Id*. at 41.

6. Spreadsheets

CBRB contends that there are spreadsheets, which may be in Excel or Word format, containing documents identified as "DIFF Owners," "Group," and "COND." *Id*. at 18. CBRB believes that these are all forms used by CBRB in conducting its business. *Id*. Defendants agreed to turn over the spreadsheets. *Id*. at 41-42.

7. Poor Condition and Time Share Forms

CBRB contends that there is a category of forms entitled "Poor Condition" and "Time Share." *Id*. at 19. CBRB argues that these are business forms used to identify condominiums in poor condition or that are going to be used in time shares. *Id*. Defendants agreed to not use the poor condition and time share forms. *Id*. at 42-43.

8. Hard Copy of CBRB Listing Agreement

CBRB contends that Bradford has a hard copy of the CBRB listing agreement, which Walker testified is proprietary to CBRB. *Id*. at 19-20.  Defendants agreed to turn over the document to CBRB. *Id*. at 44.

9. CBRB Employee List

CBRB contends that Bradford has a CBRB employee list that was e-mailed to her by Walker, which contains the names, Social Security numbers, and dates of hire of various CBRB employees. *Id*. at 20.  Defendants agreed to turn over the CBRB employee list. *Id*. at 44-45.

10. Access Identification to Benefits Portal

CBRB contends that Walker provided her access identification to the CBRB benefits portal. *Id*. at 20.  Although there is no evidence that Bradford has accessed the information, CBRB argues that the benefits portal is proprietary and should not be accessed by the Defendants. *Id*.  Defendants' counsel stated that Bradford has not accessed the portal nor will any of the Defendants access CBRB's benefits portal. *Id*. at 45.

II.  Conduct

CBRB argues that the Defendants have engaged in wrongful

conduct by: (1) soliciting CBRB employees for employment with CRI;
(2) soliciting CBRB's clients (e.g., owners and renters of
properties listed by CBRB); and (3) accessing the CBRB benefits
portal.  Transcript at 4-6, 20.  As discussed above, Defendants
agreed that they would not access CBRB's benefits portal maintained
on CBRB's computer network.  *Id.* at 45.  Defendants also agreed
that they would not use any documents obtained while employed at
CBRB to solicit CBRB's employees or clients.  *Id.* at 45-48.


III.  Other *Blackwelder* Factors

    The Defendants concede that no hardship will result from the
relief conceded at the hearing (i.e., the return of the documents
listed above).  Transcript at 49.  However, the Defendants argue
that CBRB has not shown serious and substantial questions on the
merits because the actions of Walker and Harmon do not constitute
violations under the Computer Fraud and Abuse Act ("CFAA").  *Id.* at
50-51.  Furthermore, the Defendant who was ultimately the subject
of the preliminary injunction hearing - Bradford - is not charged
with violating the CFAA nor breaching a duty of loyalty to CBRB.
*Id.* at 52.

    Defendants rest their argument on *International Association of
Machinists and Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d
479 (D. Md. 2005), in which Plaintiff's CFAA claims were dismissed

because the defendant-employee had been authorized to access the subject information. *Id.* at 499. Defendants contend that the CFAA only applies to "hackers" outside of an employer's business who do not have the authorization to access an employer's computer network, unlike Walker and Harmon who were CBRB employees authorized to access CBRB's computer network.

The *Werner-Masuda* decision adopted a narrow view of the CFAA because the Court looked at the early stages of the law and its primary focus as a criminal statute. Subsequent congressional action suggests the possibility that broader coverage would provide CBRB with a cause of action against Walker and Harmon for actions that CBRB did not authorize while they were employees and if Bradford requested CBRB information and documents from Walker and Harmon before they joined CRI. *See P.C. Yonkers, Inc. v. Celebrations The Party and Seasonal Superstore, LLC*, 428 F.3d 504 (3d Cir. 2005)(scope of CFAA has expanded during last two decades, including actions by employers against former employees who seek a competitive edge through wrongful use of information from a former employer's computer system); *Pacific Aerospace & Electronics, Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1195 (E.D. Wash. 2003)(legislative history of CFAA includes 1994 amendments adding a private cause of action and civil remedy of injunctive relief and 1996 amendments adding protection for computers within the private sector); *Shurgard Storage Center, Inc. v. Safeguard Self Storage, Inc.*, 119

9

F. Supp. 2d 1121, 1127-1129 (W.D. Wash. 2000)(reviewing broad legislative history to include civil cause of action for former employees accessing proprietary information without employer's knowledge).[5]

CBRB has shown a basis for preliminary injunctive relief.


RELIEF

CBRB will be granted the following injunctive relief: (1) return of the ten categories of documents that the Defendants have agreed to turn over; (2) Defendants cannot use the ten categories of documents for soliciting employees of CBRB; (3) Defendants cannot use the ten categories of documents for soliciting clients of CBRB; and (4) Bradford will turn over the hard drive for her home computer to Defendants' counsel.

CBRB is denied the following injunctive relief requested. Defendants will not be enjoined from using their knowledge to run CRI; absent a non-competition or non-solicitation contract with the Defendants, CBRB has no basis for such relief.

CBRB is denied access to Bradford's hard drive for examination by a forensic computer expert. As discovery proceeds, CBRB may

---

[5] The *Werner-Matsuda* decision acknowledged the broader interpretation of CFAA in the *Shurgard* case, but criticized the case as construing the statute too broadly. 390 F. Supp. 2d 479, 498-499. On the other hand, this Court in *Role Models America, Inc. v. Jimmie Jones*, 305 F. Supp. 2d 564 (D. Md. 2004) cited *Shurgard* with approval. *Id.* at 567-568.

request access to Bradford's hard drive in the context of fully argued motions containing technical legal grounds for exploring Bradford's hard drive.


CONCLUSION

For the reasons discussed above, CBRB's motion for a preliminary injunction will be granted in part and denied in part.


January 27, 2006                    _____/s/_____
Date                               William D. Quarles, Jr.
                                   United States District Judge